USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/24/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RAYMOND BOUDERAU,

                              Plaintiff,

        -against-

DUNCAN McCARTHY,

                              Defendant.

20-cv-4384 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

        Defendant Duncan McCarthy ("Defendant") moves the Court for a summary judgment
pursuant to Federal Rule of Civil Procedure 56 seeking judgment that he is not liable for the claims
asserted by plaintiff Raymond Bouderau ("Plaintiff") for purported violations of Sections 10(b)
and 20(a), and Rule 10b-5 of the Securities Exchange Act of 1934 (the "Exchange Act"), fraud in
the inducement, breach of contract, and breach of fiduciary duty/corporate opportunity doctrine.
(ECF No. 48). For the following reasons, the Court GRANTS Defendant's motion for summary
judgment in its entirety.

## FACTUAL BACKGROUND

        The following facts are derived from the record, Defendant's Rule 56.1 Statement ("Def.
56.1", ECF No. 51), Plaintiff's Counterstatement to Rule 56.1 Statement ("Pl. 56.1", ECF No. 54),
and Defendant's Reply to Plaintiff's Counterstatement to Rule 56.1 Statement ( ECF No. 56),
affidavits, declarations, and exhibits. [1] They are not in dispute unless otherwise noted.

---

[1] Citations to "Def. Ex." refer to the Exhibits attached to the Declaration of Barry M. Kazan in Support of Motion
for Summary Judgment (ECF No. 50). Citations to "Pl. Ex." refer to the Exhibits attached to the Declaration of
Raymond J. Markovitch in Opposition of Motion for Summary Judgment (ECF No. 53). Citations to "Compl. Ex."

**The Parties' Background & the Memorandum of Understanding**

The parties were friends and professional acquaintances prior to the dispute underlying this action. (Def. 56.1 ¶ 1). The parties are also both in recovery for substance abuse. (*Id.*).

Defendant sought initial capital from Plaintiff with respect to a re-bar business, Beyond Steel. (Pl. 56.1 ¶ 2; Compl. Ex. A). To win Plaintiff's investment, Defendant represented he would: (1) actively participate in Beyond Steel; (2) would remain a shareholder in Beyond Steel; and (3) would not compete with Beyond Steel. (Def. 56.1 ¶ 4).

Plaintiff agreed to provide such capital investment pursuant to a memorandum of understanding ("MOU") executed by Plaintiff, Defendant, and a non-party (the "Non-Party"). (*See* Compl. Ex. A). Under the terms of the MOU, Plaintiff would contribute $200,000 in return for a 20% premium on that initial cash investment, 40% of Beyond Steel's profits, and a five year non-compete from Defendant. (Def. 56.1 ¶ 5). The MOU is executed and dated November 19, 2019. (Compl. Ex. A).

Defendant and the Non-Party to this case were the only shareholders of Beyond Steel, with Plaintiff owning 49% of the shares and the Non-Party owning the remaining 51%. (Def. 56.1 ¶ 9; *see also* Compl. Ex. B, § 6). At the time of his investment, Plaintiff was confident that his money was secure and Beyond Steel would be successful with Defendant running the business. (*Id.* ¶¶ 10, 12).

**Plaintiff's Role at Beyond Steel**

The MOU does not expressly require Plaintiff to contribute any services to Beyond Steel. (Pl. 56.1 ¶ 40). The parties dispute whether Plaintiff would play an active role in the company and

---

Refer to Exhibits attached to the Complaint (ECF No. 1). Citations to "McCarthy Tr." and "Bouderau Tr." refer to Def. Exs. 4 and 5, respectively.

connect Beyond Steel with certain of his contacts. (Def. 56.1 ¶ 8; Pl. 56.1 ¶ 8). There was no agreement between the parties that Plaintiff would find clients for Beyond Steel. (Pl. 56.1 ¶ 41). Defendant states Plaintiff was to assist with estimating offers for bids for new jobs, while Plaintiff contends Defendant would estimate the bids "with Plaintiff's input." (Def. 56.1 ¶ 16; Pl. 56.1 ¶ 16).

The parties also dispute the extent to which Plaintiff was on Beyond Steel's payroll. (Def. 56.1 ¶ 17; Pl. 56.1 ¶ 17). The evidence indicates that Plaintiff was listed on Beyond Steel's payroll: (1) for the week ending December 3, 2019 (Def. Ex. 7) and (2) June, July, August, and September 2020 (Def. Ex. 8).

**Defendant's Role at Beyond Steel, & Obligations Under the MOU & Shareholders Agreement**

Defendant was an active participant at Beyond Steel until his departure, though none of the agreements specified a term during which Defendant was expected to remain at the business. (Def. 56.1 ¶ 18). Beyond Steel's shareholders agreement ("SA") does require unanimous consent from the business' shareholders for any shareholder to withdraw. (Compl. Ex. B, § 11).

Defendant was a member of the "Local 46" union while working at Beyond Steel, and, consequently, Beyond Steel could not perform any nonunion work. (Def. 56.1 ¶ 19). Both the MOU, (Compl. Ex. A, ¶ 5 ("for the period of five years following the termination of Shareholder's interest in [Beyond Steel], the Shareholder will be subject to the non-compete provision)), and SA, (Compl. Ex. B, § 11 ("Assignment of Interests")), contemplate the possibility of a Beyond Steel shareholder to exit the enterprise. (Def. 56.1 ¶ 20).

**Defendant's Departure from Beyond Steel**

Plaintiff relapsed and has been using drugs again since approximately July 2019. (*Id*. ¶ 21). Defendant asserts that, sometime after the MOU was signed and while in Las Vegas, he saw Plaintiff pass drugs to Plaintiff's girlfriend; Plaintiff contends that Defendant could not have known with certainty that the substance Plaintiff handed over was drugs. (*Id*. ¶ 22; Pl. 56.1 ¶ 22)

The parties dispute what reason Defendant gave Plaintiff for his departure. (*Id*. ¶¶ 23-24; Pl. 56.1 ¶¶ 23-24). Defendant asserts that he left because of fear that exposure to Plaintiff's drug use could cause Defendant to, himself, relapse. (*Id.* ¶ 23). Around late January 2020, Defendant told Plaintiff he was leaving Beyond Steel to work for his father-in-law. (Pl. 56.1 ¶ 44). Around that same time, Defendant also told Plaintiff he was leaving for more money. (*Id*. ¶ 47).

Defendant negotiated a release agreement between himself, Beyond Steel, the Non-Party, and Plaintiff. (Def. 56.1 ¶ 25). Pursuant to this agreement, Defendant gave up all of his rights and shares in Beyond Steel in return for a release from Beyond Steel, the Non-Party, and Plaintiff. (*Id*.). Plaintiff asserts that he neither negotiated nor executed this agreement with Defendant. (Pl. 56.1 ¶ 25).

**Post-Defendant's Departure**

Following Defendant's departure from Beyond Steel, he went to work at an entity named "ARO" and also left the Local 46 union. (Def. 56.1 ¶ 31). Because Defendant was no longer in the union, he was able to take nonunion jobs with ARO. (*Id*. ¶ 31). The parties dispute whether, at this point, Beyond Steel could take nonunion jobs. (*Id*. ¶ 32; Pl. 56.1 ¶ 32).

ARO won the bid on contract for Domino Sugar Factory, a nonunion job. (Def. 56.1 ¶ 33). While working at ARO, Defendant was approached by a union representative who warned

Defendant that his union benefits were at risk if he continued to work for ARO. (*Id*. ¶ 34). Accordingly, Defendant left ARO to start a landscaping company. (*Id*. ¶¶ 34-35).

## PROCEDURAL HISTORY

Plaintiff commenced this action on June 8, 2020. (*See* Compl., ECF No. 1.) Plaintiff sought redress for alleged violations of Sections 10(b) and 20(a), and Rule 10b-5, of the Exchange Act, fraud in the inducement, breach of contract, and breach of fiduciary duty/corporate opportunity doctrine. (Compl ¶¶ 25-72).

Defendant initially requested leave to file a motion to dismiss (ECF No. 7), which was granted (ECF No. 12), but instead filed an answer and counterclaim on February 1, 2022. (ECF No. 23). Plaintiff submitted an answer to Defendant's counterclaim the following day. (ECF No. 24).

Subsequently, Defendant requested leave to file a motion for summary judgment (ECF No. 37), which was granted. (ECF No. 40). Defendant's motion for summary judgment was fully briefed and filed by both parties on July 13, 2023. (*See* ECF Nos. 48-56). The parties' submissions consist of: Defendant's Memorandum of Law in Support of Motion for Summary Judgment ("Def. Mem.", ECF No. 49); Defendant's Rule 56.1 Statement; Plaintiff's Memorandum of Law in Opposition of Motion for Summary Judgment ("Pl. Opp.", ECF No 52); Plaintiff's Counterstatement to Rule 56.1 Statement; Defendant's Reply Memorandum of Law in Support of Motion for Summary Judgment (ECF No. 55); and Defendant's Reply to Plaintiff's Counterstatement to Rule 56.1 Statement.

## LEGAL STANDARDS

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of pointing to evidence in the record, including depositions, documents, affidavits, or declarations "which it believes demonstrate[s] the absence of a genuine issue of material fact," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may support an assertion that there is no genuine dispute of a particular fact by "showing . . . that [the] adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). If the moving party fulfills its preliminary burden, the onus shifts to the nonmoving party to raise the existence of a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). To oppose summary judgment, "[s]tatements that are devoid of any specifics, but replete with conclusions" will not suffice. *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (holding the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (holding the nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation" (internal quotations and citations omitted)).

A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord Gen. Star Nat'l Ins. Co. v. Universal Fabricators, Inc.*, 585 F.3d 662, 669 (2d Cir. 2009); *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008); *Benn v. Kissane*, 510 F. App'x 34, 36 (2d Cir. 2013). Courts must "draw all rational inferences in the non-movant's favor" when reviewing the record. *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 224 (2d Cir. 2014) (citing *Anderson*, 477 U.S. at 248). Importantly, "the judge's function is not [ ] to weigh the evidence and determine the truth of the matter" or determine a witness's credibility. *Anderson*, 477 U.S. at 249. Rather, "[t]he inquiry performed is

the threshold inquiry of determining whether there is the need for a trial." *Id.* at 250. A court should grant summary judgment when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

## DISCUSSION

Defendant seeks summary judgment on, and dismissal of, each of Plaintiff's claims. (*See* Def. Mem. p.1). Plaintiff asserts claims alleging: violations of Sections 10(b) and 20(a), and Rule 10b-5, of the Exchange Act, fraud in the inducement, breach of contract, and breach of fiduciary duty/corporate opportunity doctrine. (ECF No. 48). The Court will address each in turn.

### A.  Exchange Act Claims

Preliminarily, the parties dispute whether the MOU qualifies as a "security" within the meaning of the Exchange Act. (*See* Def. Mem. pp.6-8; Pl. Opp. pp.2-3). As the Court dismisses Plaintiff's Exchange Act claims on other grounds, it will assume, *arguendo*, that the MOU is a security for purposes of this Opinion & Order.

### i.    Section 10(b) & Rule 10b-5

Section 10(b) prohibits the "use or employ, in connection with the purchase of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules as the [Securities & Exchange Commission] may prescribe . . . ." 15 U.S.C. § 78j(b). Rule 10b-5 is the implementing regulation and proscribes making "any untrue statement [or omission] of a material fact . . . necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading . . . ." 17 C.F.R. § 240.10b-5(b). Plaintiff asserts that Defendant made the following representations that Defendant would: (1) actively participate in Beyond Steel; (2) remain a shareholder of Beyond Steel; and (3) not compete with Beyond Steel (the "Representations").

To sustain a claim under Section 10(b) and Rule 10b-5, a plaintiff must sufficiently allege: (1) a material misrepresentation; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation; (5) economic loss; and (6) loss causation. *Gluck v. Hecla Mining Co.*, 657 F. Supp.3d 471, 481 (S.D.N.Y. 2023) (quoting *Halliburton v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2014)). A statement is materially misleading when the representations, "taken together and in context, would have mislead a reasonable investor." *Id.* (quoting *In re Vivendi S.A. Sec. Litig.*, 838 F.3d 223, 250 (2d Cir. 2016)) (internal quotations omitted). In other words, this is an objective test that considers whether an "ordinary investor" would find the representations materially misleading.

"Scienter is a mental state 'embracing intent to deceive, manipulate, or defraud.'" *Securities and Exchange Commission v. Yorkville Advisors, LLC*, 305 F. Supp.3d 486, 511 (S.D.N.Y. 2018) (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976)). At the summary judgment stage, a plaintiff is required to "produce evidence '(1) showing that the defendant[] had motive and opportunity to commit fraud, or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness.'" *Id.* (quoting *Shenk v. Karmazin*, 868 F. Supp.2d 299, 305 (S.D.N.Y. 2012)).

Plaintiff's claim fails on scienter grounds. It is arguable that a reasonable investor would find the Representations materially misleading given Defendant's departure from Beyond Steel shortly after the MOU was executed. However, Plaintiff's only evidence that Defendant did not intend to honor the representations he made before Plaintiff executed the MOU is Defendant's shifting rationale for leaving Beyond Steel in January 2020. (Pl. Opp. pp.2-3). Even setting aside Defendant's claimed rationale that he left because of Plaintiff's alleged relapse, those rationales, given in *January 2020*, do not give rise to a showing of "motive to . . . to commit fraud" or "strong

circumstantial evidence of conscious misbehavior or recklessness" at the time the MOU was executed in *November 2019. Yorkville Advisors, LLC*, 305 F. Supp.3d at 511; (*see also* Pl. 56.1 ¶¶ 44, 47); Compl. Ex. A). Whatever Defendant's actual reason for leaving Beyond Steel, Plaintiff has adduced no evidence that he made any misrepresentations at the time Plaintiff executed the MOU.

In light of the foregoing, Defendant's motion for summary judgment with respect to Plaintiff's Section 10(b) and Rule 10b-5 claim is GRANTED, and the claim is DISMISSED.

### ii. Section 20(a)

Section 20(a) provides that "every person who . . . controls any person liable under any provision of this chapter or any rule or regulation thereunder shall also be liable . . . to the same extent as such controlled person . . . ." 15 U.S.C. § 78t(a).

As the Court has held that Defendant did not violate Section 10b or Rule 10b-5 of the Exchange Act, Plaintiff's claim under Section 20(a) is also dismissed. *See In re Omnicrom Group, Inc. Securities Litigation*, 541 F. Supp.2d 564, 554 (S.D.N.Y. 2008) (collecting cases), *aff'd,* 597 F.3d 501, 514 n.6 (2d Cir. 2010).

### B. Fraudulent Inducement Claim

Plaintiff asserts that Defendant fraudulently induced him to execute the MOU. (Compl. ¶¶ 50-59).

To bring a claim of fraudulent inducement under New York law, a plaintiff must show: (1) a knowingly false representation of a material fact and (2) detrimental reliance thereon. *Great Lakes Reinsurance (UK) SE v. Herzig*, 673 F. Supp.3d 432, 449 (S.D.N.Y. 2023) (quoting *Elite Physicians Servs., LLC v. Citicorp Payment Servs., Inc.*, No. 06 CIV. 2557 (BSJ), 2009 WL 10669137, at *6 (S.D.N.Y. Oct. 9, 2009).

Plaintiff asserts the same arguments made in support of his Exchange Act claims to undergird his fraudulent inducement claim. (*See* Pl. Opp. p.5 ("For the reasons stated in Section II [Plaintiff's Exchange Act Claims], Defendant's motion must be denied as concerns Plaintiff's [fraudulent inducement] [c]laim")). Accordingly, Plaintiff's claim fails for the same reasons that his Exchange Act claims did.

To reiterate, Plaintiff has only asserted that Defendant gave shifting, conflicting rationales to Plaintiff for why he was leaving Beyond Steel in January 2020. (Pl. 56.1 ¶¶ 44, 47). Those statements made in January 2020 do not provide any evidence that Defendant's Representations made in November 2019 prior to the execution of the MOU were "knowingly false". *Herzig*, 673 F. Supp.3d at 449.

Defendant's motion with respect to Plaintiff's fraudulent inducement claim is GRANTED, and the cause of action is DISMISSED.

### C.  Breach of Contract Claim

In the Complaint, Plaintiff asserts that Defendant breached the non-competition terms of the MOU. (Compl. ¶ 63). In his opposition, however, Plaintiff alleges Defendant's withdrawal from Beyond Steel violated the terms of the MOU. (Pl. Opp. pp.5-6). Doing so is clearly improper, and the Court will not address the latter.[2]

A breach of contract claim under New York law requires proof of: (1) an agreement; (2) adequate performance by plaintiff; (3) breach by the defendant; and (4) damages. *Parris v. New York City Housing Authority*, 364 F. Supp.3d 284, 289 (S.D.N.Y. 2019) (quoting *Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011)).

---

[2] "'It is black letter law that a party may not raise new claims for the first time in opposition to summary judgment.'" *Wright v. Jewish Child Care Ass'n of N.Y.*, 68 F. Supp.3d 520, 529 (S.D.N.Y. 2014) (quoting *Brandon v. City of New York*, 705 F. Supp.2d 261, 278 (S.D.N.Y. 2010)).

Plaintiff has provided enough evidence to create a genuine dispute of material fact as to whether Defendant's work with ARO and, in particular, the Domino Sugar Factory job amounted to competition with Beyond Steel as proscribed by the MOU. (*See* Pl. 56.1 ¶¶ 31-33).

The question then becomes whether the non-competition provision of the MOU was enforceable as a matter of law. The Court holds that it is not.

In general, because of the "powerful considerations which militate against sanctioning the loss of a man's livelihood, restrictive covenants are disfavored in New York and will be enforced only after careful analysis." *JLM Couture, Inc. v. Gutman*, 91 F.4th 91, 106 (2d Cir. 2024) (citing *Columbia Ribbon & Carbon Mfg. Co. v. A-1-A Corp.*, 42 N.Y.2d 496, 499 (N.Y. 1977)). To that end, a non-competition provision is reasonable and enforceable if it: "(1) is *no greater* than is required for the protection of the *legitimate interest* of the employer, (2) does not impose undue hardship on the employee, and (3) is not injurious to the public." *MasterCard Int'l Inc. v. Nike, Inc.*, 164 F. Supp.3d 592, 601 (S.D.N.Y. 2016) (quoting *BDO Seidman v. Hirshberg*, 93 N.Y.2d 382, 388-89 (N.Y. 1999)) (internal quotations omitted, emphasis in original). "Courts also typically examine whether the restriction is limited in time and geographic scope to assess reasonableness." *Id*. The analysis turns on the "particular facts and circumstances giving context to the agreement." *Id*. (quoting *Reed Elsevier Inc. v. Transunion Holding Co., Inc.*, No. 13 Civ. 8739 (PKC), 2014 WL 97317, at *7 (S.D.N.Y. Jan. 9, 2014) In *BDO Seidman*, the New York Court of Appeals restated that cognizable employer interests in this analysis are limited to "protection against misappropriation of the employer's trade secrets or confidential customer lists, or protection from competition by a former employee whose services are unique or extraordinary[,]" while making the addition of preventing the exploitation or appropriation of

goodwill as a viable, cognizable interest. *BDO Seidman*, 93 N.Y.2d at 390-92 (citing *Reed, Roberts Associates, Inc. v. Strauman*, 40 N.Y.2d 303, 308 (N.Y. 1976)).

The MOU's noncompete provision prohibits Defendant from "directly or indirectly, either as a principal, agent, employee, employer, consultant, partner, member or manager of a limited liability company or shareholder of a company, engage or otherwise participate in any manner or fashion in any business that is in competition in any manner whatsoever with the business activities of [Beyond Steel.]" (Compl. Ex. A, § 5). The noncompete provision sets a geographic scope of fifty miles. (*Id*.).

As referenced above, Plaintiff does not engage with Defendant's argument that the noncompete is unenforceable, opting instead to improperly raise a new claim. (Pl. Opp. pp.5-6). Most damningly, Plaintiff fails to respond to Defendant's argument that he has raised no cognizable interest that can support the noncompete. There are no allegations that Defendant misappropriated trade secrets or confidential customer lists, or sought to capitalize on Beyond Steel's goodwill. *BDO Seidman*, 93 N.Y.2d at 390-92. Similarly, while the Court has found that there is a genuine dispute of material fact as to whether Defendant's work with ARO constituted "competition", Plaintiff again asserts no facts or evidence that Defendant's services were unique or extraordinary. *Id*. Without such evidence, or even argument on the relevant points, and in light of New York's general aversion to enforcing noncompete provisions, *see Gutman*, 91 F.4th at 106, the Court cannot find that Plaintiff has a cognizable interest sufficient to render the noncompete agreement enforceable.

As such, Defendant's motion for summary judgment on Plaintiff's breach of contract claim is GRANTED, and the claim is DISMISSED.

### D.  Breach of Fiduciary Duty Claim

Plaintiff's final claim alleges he was owed fiduciary duties under the SA as a third-party beneficiary and that Defendant breached that duty when he joined ARO. (Compl. ¶¶ 65-72).

New York law requires shareholders, officers, and directors of a closely head corporation to "deal fairly, in good faith, and with loyalty to the corporation and other shareholders." *American Federal Group, Ltd. v. Rothenberg*, 136 F.3d 897, 905 (2d Cir. 1998).

The Court reiterates that it is assuming, *arguendo*, the MOU is a security for purposes of this Opinion & Order. The MOU provides Plaintiff an interest in Beyond Steel's profits, (Compl. Ex. A.), and profits interests are sufficient for a holder to be owed a fiduciary duty. *See Fitzpatrick v. American Intern. Group, Inc.*, No. 10 Civ. 142 (MHD), 2013 WL 709048, at *12 (S.D.N.Y. Feb. 26, 2013) (holding that failure to pay profits interests presented a genuine question of material fact as to whether fiduciary duties were violated); *Brown v. Cerberus Capital Management, L.P.*, 173 A.D.3d 513, 314 (1st Dep't 2019) (holding that unpaid profits interests held by at-will employees who *contributed no capital*[3] were not owed a fiduciary duty). The Court will therefore further assume, *arguendo*, that Plaintiff's rights under the MOU were of a kind that he was owed a fiduciary duty.

Even assuming Plaintiff was owed fiduciary duties, his claim fails. Plaintiff does not identify what duty Defendant allegedly breached, only making the conclusory statement Defendant owed Plaintiff such duties. (Pl. Opp. p.6).[4] The Complaint provides some guidance, indicating that Defendant "diverted" in some fashion the Domino Sugar job. (Compl. ¶ 69).

---

[3] The Court notes again that Plaintiff provided Beyond Steel's initial capital pursuant to the MOU. (Compl. Ex. A).

[4] Defendant argues that the MOU was a simple contractual relationship giving rise to no fiduciary duties, which, in light of the Court's assumptions in this Opinion & Order, is inapt. (Def. Mem. p.12).

13

Plaintiff's own testimony, however, unequivocally indicates "Beyond Steel did not bid [the Domino Sugar] job." (Bouderau Tr. p.44, 16-17). Moreover, Plaintiff also testified he "presume[d]" ARO made its bid on the Domino Sugar job prior to Defendant joining ARO. (*Id*. p.45, 10-12). Plaintiff does assert that Defendant "divert[ed] assets and management, not the actual product[,]" before clarifying that the assets were Defendant's "management skills and the assets of people that . . . he would employ." (*Id*. p.44, 13-15, 18-20). Taken together, then, Plaintiff's objection appears to be that Defendant had taken his management skills and worker contacts list to ARO and used them on a job for which Beyond Steel did not bid.

Whatever fiduciary duties that Defendant may have owed Plaintiff, they extinguished, with one exception, when he left Beyond Steel. Defendant told Plaintiff he was leaving Beyond Steel in late January 2020 and presumably left shortly thereafter. (Pl. 56.1 ¶¶ 44, 48). Further, the parties do not dispute that work on the Domino Sugar job was already underway in January 2020. (Def. 56.1 ¶ 32; Pl. 56.1 ¶ 56.1).

Under New York law, however, the "corporate opportunity doctrine prohibits a corporate employee from utilizing information obtained in a fiduciary capacity to appropriate a business opportunity belonging to the corporation." *Rothenberg*, 135 F.3d at 906 (citing *Alexander & Alexander, Inc. v. Fritzen*, 147 A.D.2d 241, 246 (N.Y. 1989)). The doctrine extends past a fiduciary's employment with the corporation. *Id*. (citing *Abbott Redmont Thinlite Corp. v. Redmont*, 475 F.2d 85, 88 (2d Cir. 1972)). Even so, the doctrine requires the corporation have a "tangible expectancy" in the opportunity, which is "something much less tenable than ownership, but, on the other hand, more certain than a desire or hope." *Kleeberg v. Eber*, 665 F. Supp.3d 543, 573 (S.D.N.Y. 2023) (quoting *Berman v. Sugo LLC*, 580 F. Supp.2d 191, 206 (S.D.N.Y. 2008)).

Here, Plaintiff's own testimony states that Beyond Steel did not bid on the Domino Sugar job. (Bouderau Tr. p.44, 16-17). Further, the Domino Sugar job was already ongoing in January 2020 when Defendant first gave Plaintiff notice of his intention to leave Beyond Steel. (Pl. 56.1 ¶¶ 32, 44, 48; Def. 56.1 ¶ 32). Consequently, Beyond Steel had no "tangible expectancy" in the Domino Sugar job, and Defendant breached no fiduciary duties.

Defendant's motion for summary judgment with respect to Plaintiff's fiduciary duties claim is GRANTED, and the claim is DISMISSED.

## CONCLUSION

For the foregoing reasons, the Defendant's motion for summary judgment is GRANTED in its entirety. Plaintiff's complaint is DISMISSED.

The only remaining claims in this action are Defendant's counterclaims against Plaintiff.

The Parties are directed to appear for a telephonic pre-trial conference on May 29, 2024 at 10 a.m. To access the telephonic pre-trial conference, please follow these instructions: (1) Dial the meeting number: (877) 336-1839; (2) enter the Access Code: 1231334#; (3) press pound (#) to enter the conference as a guest.

The Clerk of the Court is directed to terminate the motions at ECF No. 48.

Dated: April 24, 2024                                        SO ORDERED:
      White Plains, New York

                                             _____
                                                NELSON S. ROMÁN
                                       United States District Judge